**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, NY  11556
Tel: 516-357-3000
Fax: 516-357-3333
Matthew V. Spero, Esq.
*Attorneys for Kapitus Servicing, Inc. as authorized*
*sub-servicing agent of Kapitus LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: 11/12/24, 11:00am

------------------------------------------------------------------------X
In re:

DALE GOLDSCHLAG,

Chapter 11
Case No. 24-10297-PB

Debtor.
------------------------------------------------------------------------X

### REPLY OF KAPITUS SERVICING, INC. AS AUTHORIZED SUB-SERVICING AGENT OF KAPITUS LLC TO OBJECTION OF DEBTOR TO DISALLOW AND EXPUNGE CLAIM NUMBER TWELVE

Kapitus Servicing, Inc., as authorized sub-servicing agent of Kapitus LLC ("Kapitus"), by its undersigned counsel, as and for its reply to the Debtor's Objection to Claim Number Twelve (ECF no. 67; "Objection"), respectfully states as follows:[1]

### BACKGROUND OF CASE

The Objection smacks of bad faith and should be overruled.

26 claims have been filed in this case. The Debtor has objected to 24 of them. It seems almost statistically impossible that 92% of the claims filed in a Chapter 11 case (i.e., all but two) are truly subject to a bona fide dispute.

Among the claims that the debtor has disputed in his schedules or in a claims objection are: the mortgagee of his personal residence (First Horizon Bank), the Board of Managers of his

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

condominium (Board of Managers of the Heritage Condominium), his credit cards (Discover Bank, American Express, US Bank, Wells Fargo), the lessor of his BMW (BMW Financial Services), a revolving credit (Synchrony Bank), and multiple personal guarantees given by the debtor to either his business's equipment lessors (EverBank f/k/a TIAA, FSB and North Mill Credit Trust) or for funds previously provided to the debtor's businesses (Kapitus, Bluevine Inc., and Alliance Funding Group).

The Debtor will have the Court believe that *every single one* of these claims should be expunged. While Kapitus has no firsthand knowledge of the details of any claim other than its own, the sheer number of objections and disputed claims makes apparent that the debtor simply wishes to engage in vexatious and costly litigation to hide the fact that he has no plausible plan to reorganize.

In fact, by the time of the hearing date on the Objection, the 10-month anniversary of this Chapter 11 will have passed. No plan has ever been proposed.[2] Until recently, the Debtor's secured creditor/mortgagee First Horizon was seeking to terminate loss mitigation and alleging that the Debtor had failed to make any post-petition mortgage payments, notwithstanding the Debtor's post-petition gross income of $162,098.00 (ECF no. 100).[3] US Bank is seeking to lift the automatic stay on two other properties and alleging it also has received no post-petition payments (ECF nos. 56, 57). And now, the Debtor has waged war with nearly his entire creditor body via his mass claims objections (ECF nos. 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 101, 102, 103, and 104.)

---

[2] The docket (ECF no. 1) indicates a plan was due by June 24, 2024. None has been filed, nor has there even been a request by the Debtor for an extension.
3 The parties are currently addressing a dispute over the correct amount of adequate protection that should be paid.

2

This all comes on the heels of four of the Debtor's companies having filed and failed to confirm their own bankruptcy cases, resulting in their voluntary dismissals earlier this year.[4]

The Debtor is causing the Court and the creditor body to expend extraordinary time, resources, and costs. He has retained two sets of professionals and seems set to incur additional, significant administrative expenses as a result of the 25 claims objections he has now filed in this individual Chapter 11 case.

The Court should overrule the Objection.

## **THE CLAIM**

As set forth in Kapitus's proof of claim (Claims Register No. 12; the "**Claim**"), Kapitus's Claim arises under and is related to certain agreements and documentation including, without limitation, (i) Forward Purchase Agreement dated December 29, 2022 (the "**Agreement**"); (ii) Security Agreement and Guaranty dated December 29, 2022 (the "**Security Agreement**" or "**Guaranty**"); and (iii) all documents referenced in, and/or related to the Agreement, the Guaranty, and the Claim, as well as provisions of applicable law.

On December 29, 2022, Kapitus, Dale D. Goldschlag, D.D.S., P.C. ("**Seller**"), which is the Debtor's wholly-owned company, and Debtor executed the Agreement and Guaranty. As further detailed in the Agreement and Guaranty, Kapitus purchased certain future receivables of Seller in consideration of $150,000 (the "**Purchase Price**") provided to Seller and Debtor. In exchange for the Purchase Price, Seller and Debtor authorized Kapitus to ACH debit a total of $225,000 (the "**Purchased Amount**") of Seller's receipts from its depositing bank account. The parties agreed Seller would deliver 3.5% of its receipts (the "**Specified Percentage**") to Kapitus on a weekly

---

[4] Namely, *In re: Refined Dental Laboratory, LLC* (no. 23-22460-shl)*; In re: Dale D. Goldschlag, D.D.S., P.C.* (no. 23-22461-shl); *In re: Total Dental Implant Solutions LLC* (no. 23-22462-shl)*;* and *In re: CDIC Holdings, LLC* (no. 23-22464-shl.)

3

basis until Kapitus received the Purchased Amount in full. To effectuate the forgoing, Seller and Debtor authorized Kapitus to ACH Debit $1,440 (the "**Specified Amount**") on a weekly basis from the designated deposit account as the base payment credited against the Specified Percentage due. The Specified Amount was an estimate of the Specified Percentage, which would be reconciled to reflect the Seller's actual receipts upon request.

As further consideration for the purchase, Seller granted a security interest in its assets and Debtor guarantied Seller's performance of all representations, warranties, and covenants in the Agreement (the "**Guaranteed Obligations**"). The parties agreed Debtor would be liable for all costs and expenses, including but not limited to attorneys' fees and court costs, which Kapitus may incur in connection with the collection of any or all of the Guaranteed Obligations. The parties also agreed the Agreement would be governed by Virginia law.

Debtor and Seller defaulted on their obligations under the Agreement and Guaranty by May 11, 2023.

## RELEVANT LEGAL AUTHORITY

Section 502(a) of the Bankruptcy Code provides that any claim for which a proof of claim has been filed shall be deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code.

> If the proof of claim complies with the requirements of Bankruptcy Rule 3001 and Official Form 410, then it "shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). In other words, the party objecting to such a claim has the initial burden of going forward with evidence to refute the claim even though the creditor retains the ultimate burden of persuasion with regard to the validity of the claim. See *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *In re Armstrong*, 320 B.R. 97, 104

> (Bankr. N.D. Tex. 2005). See also *In re Sandifer*, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004) (holding that a creditor who establishes the prima facie validity of the claim may refrain from presenting additional documentation).

*In re Live Primary, LLC*, 626 B.R. 171, 188–89 (Bankr. S.D.N.Y. 2021).

A debtor must do more than merely file a formal objection to a claim to overcome the presumption of validity. *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000). "To defeat a prima facie valid claim under section 502, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Margulies Law Firm v. Placide (In re Placide)*, 459 B.R. 64, 72 (9th Cir. BAP 2001) (internal quotations omitted).

## **THE AGREEMENT IS NOT A USURIOUS LOAN**

The Objection's sole argument for the Claim being disallowed and expunged is that the Agreement is actually a "usurious loan." Tellingly, Debtor does not define "usurious loan" in any manner, but does indiscriminately cite to certain decisions from New York even though, as set forth above, Virginia law controls.

Nevertheless, Debtor's argument fails regardless of which state's rule of law the Court applies as, under either, the Agreement is not a loan.

Even if it was, Debtor could not raise such a defense in support of his Objection under Virginia law because the Agreement was entered into for business purposes.

Third, even if the Agreement was a loan and usury was an available defense, the Agreement is not usurious.

1. **The Agreement Is Not a Loan**

   a. **Virginia Law**

Virginia law makes clear that the Agreement is a financing arrangement for the purchase and sale of future receipts and thus, not a loan. When interpreting a contract, a court should examine the document itself and, if unambiguous, apply its plain meaning. *See Pocahontas Mining LLC v. CNX Gas Co., LLC*, 276 Va. 346, 353-54 (2008) ("[w]hen the writing, considered as a whole, is clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument"). For usury to apply, there first must be a loan of money or a forbearance of an existing debt. *See Galloway v. Bluegreen Vacation Club*, No. 3:11CV481-HEH, 2012 U.S. Dist. LEXIS 4223, at *7 (E.D. Va. Jan. 13, 2012). Without such, there can be no usury. *See id.* (citing *Brill v. Smeltzer*, 29 Va. Cir. 292 (1992)); *Kidd v. Brothers*, 212 Va. 197 (1971). Underscoring this principle is that it is well settled under Virginia law that its usury laws cannot apply to bona fide sales transactions because by their nature they expressly do not qualify as a loan or the forbearance of an existing debt. *See Graeme v. Adams*, 64 Va. 225, 234 (1873) ("It is well settled that on a contract to secure the price or value of work and labor done or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves, if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is neither a loan or the forbearance of a debt, but simply the contract price of work and labor done or property sold; and the difference between cash and credit in such cases, whether six, ten or twenty per cent, must be left exclusively to the contract of the parties; and no amount of difference fairly agreed on can be considered illegal"); *see also Galloway*, 2012 U.S. Dist. LEXIS 4223, at *8.

Here, it is clear from the face of the Agreement that it is not a loan of money or forbearance of an existing debt. Page one of the Agreement has a header stating: "Forward Purchase Agreement (Fixed ACH Delivery)". The body of the Agreement also makes plain that Seller had sold the Purchased Amount of receivables and agreed to deliver same through the Specified Amount, which it could reconcile to the Specified Percentage upon request. The Agreement further states, among other things, that:

> **1.1 Sale of Receipts**. Seller and Purchaser intend that the transfer of the interest in the Receipts from Seller to Purchaser constitutes a forward sale, and not a loan, for all legal, practical and business purposes. Seller agrees that the Purchase Price equals the fair market value of the Receipts being purchased as of the date sold that are expected to come into existence in the future in the ordinary course of the operation of Seller's business. Title to, responsibility for and risk of loss of the interest in the Receipts shall pass from the Seller to the Purchaser upon execution of this Agreement with respect to the Purchased Amount. In addition:
> …
> (b) the parties acknowledge that the delivery of the Purchase Price is not a payment in whole or in part for the use or forbearance of money, but rather delivery of the bargained for payment of the purchase price to Purchaser under the Purchase Agreement, notwithstanding anything to the contrary contained herein;
> (c) the Parties agree and acknowledge that there is no stated or unstated interest factor in this Agreement, and no interest will be paid;
> (d) in the event that a court ignores the intent of the parties that the Transaction Documents be treated as a forward purchase of Receipts, and further determines that the arrangement creates a loan or other indebtedness rather than a completed forward sale of Receipts, and further determines that under that court determined arrangement that the PURCHASER has charged or received "interest," and further determines that the amount of interest is in excess of the highest applicable rate, the imputed rate so determined shall automatically be reduced to the maximum rate permitted by applicable law and Purchaser shall promptly refund to Seller as liquidated damages any amount received by Purchaser in excess of such maximum lawful rate, it being intended that Seller not pay or contract to pay, and that Seller not receive or contract to receive, directly or indirectly in any manner whatsoever, interest on indebtedness in excess of that which may be paid by Seller under applicable law.

As such, Virginia courts routinely rule that contracts such as the Agreement are not loans. *See* Ex. "A", *Strategic Funding Source, Inc. v. Milton Jules Segal*, No. CL18003803-00, Letter Opinion (Va. Hanover Cir. Mar. 5, 2021) (purchase and sale of future receivables agreement not a loan,

7

noting "[t]he language used shows that the intention of the contract is not to create a loan, but to sell future receivables to Strategic Funding."); Ex. "B", *Kapitus Servicing, Inc. v. Lena LA d/b/a T.J. Nails*, No. CL21-1205, Letter Opinion (Va. Henrico Cir. Feb. 14, 2022) (finding the contract was not a loan but "a factoring agreement where Kapitus agreed to the purchase and sale of future receivables from the defendant").

    **b.** <u>**New York Law**</u>

Applying New York law would also require a finding that the Agreement is not a loan. Like in Virginia, in New York it is fundamental that only a loan can be found to be usurious. *See Donatelli v. Siskind*, 170 A.D.2d 433, 434 (2d Dep't 1991) (usury only applies to a "loan or forbearance of any money, goods or things in action"); *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, there can be no usury, however unconscionable the contract may be"); *Lynx Strategies LLC v. Ferreira*, 28 Misc. 3d 1205(A), 1205(A) (Sup. Ct. N.Y. Co. Jul. 6, 2010) ("The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term. The instant transaction, by contrast, is an ownership interest in proceeds for a claim, contingent on the actual existence of any proceeds.").

In performing a purchase and sale of receivables versus loan analysis, "the court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. 'For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard.'" *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc. 3d 807, 816 (Sup. Ct. Westchester Co. May 4, 2017) (*quoting Rubenstein v. Small*, 273 A.D. 102, 104 [1st Dep't 1947]). New York courts consider three factors in determining whether a transaction is a loan or sale of receivables: "(1) whether there is a

8

reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dep't 2022).

The first factor New York courts consider "is whether or not there is a reconciliation provision in the agreement. A reconciliation provision allows a merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof). If a merchant is doing poorly, the merchant will pay less, and the amount of receivables being taken by the financing company will be adjusted downward. If the merchant is doing well, it will pay more than the daily amount ***to reach the specified percentage***." *K9 Bytes, Inc.*, 56 Misc. 3d at 816-817 (emphasis added); *see also Rapid Capital Fin., LLC v. Natures Mkt. Corp.*, 66 N.Y.S.3d 797, 801 (Sup. Ct. Westchester Co. 2017) ("While the reconciliation provision here may not have specifically provided a mechanism for defendant to affirmatively seek an adjustment, it imposes on plaintiff an obligation to reconcile defendant's account so that the amount debited per month ***would equal the specified percentage***.") (emphasis added). Essentially, a reconciliation provision ensures the merchant will not pay more than the agreed upon percentage. If there is no reconciliation provision, New York courts may consider the agreement a loan. *K9 Bytes, Inc.*, 56 Misc. 3d at 816-817.

Here, the Agreement clearly contains a reconciliation provision which permitted Seller to adjust the Specified Amount based on the Specified Percentage. In relevant part, the Agreement provides:

> **Reconciliation:** The Specified Amount shall be reconciled to reflect the Seller's actual Receipts at Seller's request. Seller may initiate a reconciliation by calling 1-800-780-7133 and requesting to speak with a Kapitus Servicing, Inc. ("Servicer") customer service representative. The Seller agrees to provide any information needed to complete such reconciliation, including providing online access to Seller's banking transaction data through a secure, read-only link. It is the Seller's

9

responsibility to provide bank transaction data and/or statements for any and all bank accounts held by the Seller to reconcile the ACH debits to the Specified Percentage permitting Servicer to debit or credit the difference to the Seller. Upon verification of the Receipts generated by Seller, Servicer shall adjust the Specified Amount on a going-forward basis to more closely reflect the Seller's actual Receipts. Once the Seller elects to conduct a reconciliation, either Party may thereafter request a reconciliation once every 30 days. After each adjustment, the new dollar amount shall be deemed the Specified Amount until any subsequent adjustment. **SELLER SHALL NOT BE ENTITLED TO ANY RECONCILIATION IF SELLER HAS DEFAULTED UNDER ANY OF THE TRANSACTION DOCUMENTS**.

This factor significantly weighs against a finding that the Agreement is a loan. *See e.g.*, *K9 Bytes, Inc.*, 56 Misc. 3d at 816-817; *Rapid Capital Fin., LLC*, 66 N.Y.S.3d 797, 801 (Sup. Ct. Westchester Co. 2017); *Reserve Funding Grp. LLC v. Cal. Organic Fertilizers, Inc.*, No. 24-CV-1112 (ARR) (LB), 2024 U.S. Dist. LEXIS 67438, at *7 (E.D.N.Y. Apr. 12, 2024) (the "Revenue Purchase Agreement" contained "reconciliation and adjustment provisions, which counsel against finding that the agreement is a loan."); *Principis Cap., LLC*, 201 A.D.3d at 754 (agreement was not a loan because "[t]he terms… specifically provided for adjustments to the monthly payments… based on changes in … monthly sales" and so "the term of the agreement were not finite").

To be clear, unlike the cases cited by Debtor, here there is a reconciliation provision, and it is mandatory as opposed to discretionary. *Compare* Agreement ¶ 8 (Kapitus "***shall*** adjust the Specified Amount on a going-forward basis to more closely reflect the Seller's actual Receipts.") *with* Objection pp. 5-7. Indeed, Judge Borrok, who Debtor cites in *People by James v. Richmond Cap. Grp. LLC*, 80 Misc. 3d 1213(a) (Sup. Ct. N.Y. Co. 2023), a case where "Predatory Lenders" -- not Kapitus -- admitted that they did not perform reconciliations, has dismissed a merchant's claim that a merchant cash advance agreement was actually a usurious loan, where the agreement contained, like here, a mandatory reconciliation provision, and there did not appear to be any basis to merchant's allegation that the reconciliation process was a sham. *Spin Capital LLC v. Golden*

*Foothill Ins. Servs. LLC*, No. 650582/2022, 2023 N.Y. Misc. LEXIS 747 (Sup. Ct. N.Y. Co. Feb. 28, 2023). As such, this factor weighs decidedly in favour of finding the Agreement is not a loan.

The next factor New York courts consider is whether or not the agreement has a finite term. "If the term is indefinite, then it 'is consistent with the contingent nature of each and every collection of future sales proceeds under the contract." *See, e.g.*, *K9 Bytes, Inc.*, 56 Misc. 3d at 817. The Agreement is for an indefinite term, further cementing its status as an agreement and not as a loan. *See* Agreement ("**1.2 Terms of Agreement**. The Purchase Agreement shall have an indefinite term."); *see Reserve Funding Grp. LLC*, 2024 U.S. Dist. LEXIS 67438, at *9-10 (indefinite term counsels against an agreement being a loan)

The final factor New York courts consider in distinguishing a purchase and sale from a loan is "whether the defendant has any recourse should the merchant declare bankruptcy." *K9 Bytes, Inc.*, 56 Misc. 3d at 818. Here, the Agreement does not contemplate bankruptcy as an event of default. While inclusion of a provision that a plaintiff may enforce a security interest even in the event of bankruptcy could suggest an agreement is a loan rather than a merchant agreement, such a provision is "insufficient, ***alone***, to establish [an] Agreement is … actually a loan." *See e.g*. *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc., 2019 U.S. Dist. LEXIS 57527, at *16 (E.D.N.Y. April, 2019)*, (citing *Rapid Capital Fin.*, 57 Misc.3d at 984); *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp.3d 274, n.2 (S.D.N.Y. 2017) (although bankruptcy was an event of default, buyer bore risk that sales will decline or cease because failure to generate receipts was not an event of default); *K9 Bytes*, 56 Misc. 3d at 818 (finding agreement to be a sale even though bankruptcy allowed buyer to enforce personal guaranty upon bankruptcy and file confession of judgment). Here, like in *K9 Bytes, Inc.*, *Power Up Lending Grp., Ltd.*, *Colonial Funding Network, Inc. for TVT Capital, LLC*, the bankruptcy provision, alone, is

11

insufficient to support a finding that the Agreement constitutes a loan rather than a purchase and sale agreement.

Indeed, courts have routinely rejected the argument that agreements similar to the one at issue here are loans. *See* Ex. "C", *FMF Corp. I v. Strategic Funding Source, Inc.*, No. 64093/2019, Decision and Order (Dkt. No. 169) (Sup. Ct. Westchester Co. Mar. 18, 2021) (determining as a matter of law that the agreement at issue is not a loan); *Colonial Funding Network, Inc. for TVT Capital, LLC*, 252 F. Supp.3d at 274 (agreement not a usurious loan); *Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 159 A.D.3d 507, 507 (1st Dep't 2018) ("The court properly dismissed the complaint seeking to vacate the judgment by confession. The evidence demonstrates that the underlying agreement leading to the judgment by confession was not a usurious transaction"); *In re R&J Pizza Corp.*, No. 14-43066-CEC, 2014 WL 12973408 (Bankr. E.D.N.Y. Oct. 14, 2014) (purchase agreement is not a loan); *Fast Trak Investment Company, LLC v. Sax*, No. 4:17-cv-00257-KAW, 2018 WL 2183237, at *6 (N.D. Cal. May 11, 2018) (applying New York law, "[s]ince the Agreements are assignments of the sale or proceeds rather than loans, there could be no usury."); *NY Capital Asset Corp. v. F&B Fuel Oil Co., Inc.*, 58 Misc.3dd 1229(A) (Sup. Ct. Westchester Co. Mar. 8, 2018) (agreement not a loan); Ex. "D", Decision and Order of the Supreme Court, Appellate Division, First Department, *Strategic Funding Source, Inc. v. Steenbok, Inc.*, No. 2021-00877, NYSCEF Dkt. No. 12 (June 22, 2021) ("[P]er the eight merchant agreements, repayment to plaintiff was contingent on future receivables existing. Accordingly, the cash advance was not a loan is thus-not a usurious transaction.") (vacated per settlement); *Colonial Funding Network, Inc. v. Ohio Home Pros Remodeling and Design, LLC*, No. 654620/2016, 2024 WL 3221252 (Sup. Ct. N.Y. Co. June 21, 2024) ("the terms of the Agreement do not support a finding that it was a loan"); *Colonial Funding Network, Inc. v. PTI Dedicated Services, LLC*, No.

654629/2016, 2024 WL 3221256 (Sup. Ct. N.Y. Co. June 21, 2024) (same); *Colonial Funding Network, Inc. v. Cheaters Spy Shop, Inc.*, No. 652973/2017, 2024 WL 3188780 (Sup. Ct. N.Y. Co. 2024) (rejecting argument that the agreement was a usurious loan); *Colonial Funding Network, Inc. v. Davincitek Corp.*, No. 652745/2017, 2021 N.Y. Misc. LEXIS 39 (Sup. Ct. N.Y. Co. Jan. 5, 2021) ("terms of the Agreement demonstrate, as a matter of law, that the transaction was for the purchase of future receivables and did not constitute a criminally usurious loan"); *Spin Capital LLC*, 2023 N.Y. Misc. LEXIS 747; *Reserve Funding Grp. LLC*, 2024 U.S. Dist. LEXIS 67438, at *7; *Strategic Funding Source, Inc. v. Takeastrole, LLC*, No. 654376/2020, 2024 WL 1354362, at *1 (Sup. Ct. N.Y. Co. Mar. 26, 2024) (vacating prior dismissal order, holding a credit card processing agreement could not be determined to be a loan as a matter of law); *In re Polk*, No. 18-30913-JPS, 2020 WL 762215, at *10-11 (Bankr. M.D. Ga. Feb. 13, 2020) (under New York law, "these types of contracts are actual sale contracts and not loans"); *Kapitus Servicing, Inc. v. Point Blank Constr. Inc.*, 221 A.D.3d 532, (1st Dep't 2023) ("the record does not support a finding that the existence of a loan can be gleaned from the face of the agreement as a matter of law"); Ex. "A", *Strategic Funding Source, Inc. v. Milton Jules Segal*, No. CL18003803-00, Letter Opinion (Va. Hanover Cir. Mar. 5, 2021); Ex. "E", *Strategic Funding Source, Inc. v. Maryann Parkhurst*, No. CV-8697-23/NY, Decision/Order (Civ. Ct. City of New York Apr. 30, 2024) ("[T]he merchant cash advance agreement at issue is not a loan subject to usury limits…"); Ex. "F", *Kapitus Servicing, Inc. v. David Ernest Stamm*, No. CV-002447-23/NY, Decision/Order (Civ. Ct. City of New York Mar. 11, 2024) ("defendants usury defense is misplaced as the instrument at issue was a sales contract for future receivables rather than a loan"); *see also* Ex. "G", Order Granting Defendant's Motion to Dismiss and Granting in Part Plaintiff's Motion for Leave to Amend, *In re JLK Construction, LLC*, No. 23-4031, Doc. No. 48 (Bankr. W.D. Mo. June 6, 2024), at *29-30

(under New York law, corporations cannot bring usury causes of action but can raise usury as an affirmative defense).

2. **Debtor Is Barred from Raising Usury Under Virginia Law**

Even if the Agreement was a loan under Virginia law, which it was not, Debtor could not avail himself of Virginia's usury laws. Va. Code § 6.2-317 provides:

> A.   For purposes of this section:
>   1. A loan shall be deemed to be for business or investment purposes if it is not for personal, family, or household purposes; and
>   2. Personal, family, or household purposes do not include a passive or active investment.
>
> B.   No person shall, by way of defense or otherwise, avail himself of the provisions of this chapter, or any other statutory or case law relating to usury or compounding interest, to avoid or defeat the payment of interest, or any other sum, in connection with a loan made to a person for business or investment purposes, if the initial amount of the loan is $5,000 or more.

*Id.*

Here, Debtor plainly entered into the Agreements for business purposes and Seller received over $5,000. *See generally* Agreement ("**2.13 Business Purpose.** Seller is a valid business in good standing … and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes"). Thus, even if the Agreement did constitute a loan under Virginia law (which it does not), Debtor could not avail himself of the protections of usury. Va. Code § 6.2-317; *see also* Ex. "A", *Strategic Funding Source, Inc. v. Milton Jules Segal*, No. CL18003803-00, Letter Opinion (Va. Hanover Cir. Mar. 5, 2021) ("Furthermore, by examining the whole [purchase and sale of future receivables agreement] it is clear the intention is for the agreement to apply to businesses" and so the usury defense was not available pursuant to Va. Code § 6.2-317); *see also* Ex. "B", *Kapitus Servicing, Inc. v. Lena LA d/b/a T.J. Nails*, No. CL21-1205, Letter Opinion (Va. Henrico Cir. Feb. 14, 2022) (usury did not apply because "Provision 2.12 of the Agreement titled 'Business Purpose' clearly states that the Defendant 'is entering into this

14

Agreement for business purposes and not as a consumer for personal, family or household purposes.").

Thus, even if the Agreement did constitute a loan, which it is not, Virginia law, which applies, does not permit Debtor to raise usury to avoid payment.

### 3. The Agreement Is Not Usurious

Even if the Agreement was a loan, which it is not, and even if Debtor could raise usury to avoid payment, which he cannot, the Agreement is not usurious under either New York or Virginia law. Virginia law provides that "[e]xcept as otherwise permitted by law, no contract shall be made for the payment of interest on a loan at a rate that exceeds 12 percent per year." Va. Code § 6.2-303. New York provides that a transaction is usurious under civil law when it imposes an annual interest rate exceeding sixteen percent. *See* General Obligations Law § 5-501[1]; Banking Law § 14-a [1].

Here, because the Agreement is for an indefinite term and Seller could reconcile the Specified Amount, even in the unlikely event the Court may eventually hold the Agreement is not a purchase and sale agreement but a loan -- with which Kapitus disagrees -- it would be impossible to determine an interest rate establishing that the Agreement is usurious. *See IBIS Capital Grp. LLC v. Four Paws Orlando LLC*, 2017 N.Y. Misc. LEXIS 884, at *10 (Sup. Ct. Nassau Co. Mar. 10, 2017).

Accordingly, as set forth above, the Agreement is valid and the Court must overrule the Objection in its entirety.

### CONCLUSION

For all of the foregoing reasons, Kapitus respectfully requests that the Court enter an Order overruling the Objection in its entirety and providing such other and further relief as the Court deems appropriate.

Dated: Uniondale, New York
       November 5, 2024

                                          Respectfully submitted,
                                          RIVKIN RADLER LLP

                                          By: */s/ Matthew V. Spero*_____
                                              Matthew V. Spero, Esq.
                                              926 RXR Plaza
                                              Uniondale, New York 11556
                                              Telephone:    (516) 357-3000
                                        *Attorneys for Kapitus Servicing, Inc. as authorized*
                                         *sub-servicing agent of Kapitus LLC*

4876-9808-1520, v. 3