**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**DALE D. GOLDSCHLAG,**<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10297-PB |

**STIPULATION AND ORDER CONCERNING ADEQUATE
PROTECTION PAYMENTS AND GRANTING
CONDITIONAL RELIEF FROM THE AUTOMATIC STAY**

Loan Nos.:           1484423494 (Unit 17B) and 1484425036 (Unit 17B and Unit 17C)

Current Beneficiary:   First Horizon Bank

Property Address:    The Heritage Condominium
                     240 Riverside Blvd. Unit 17B and Unit 17C
                     New York, NY 10069

Borrower:            Dale D. Goldschlag

Date:                APRIL 22, 2025

WHEREAS, the following Agreement is made between First Horizon Bank (the "Beneficiary"), as the holder of the Promissory Notes and current Beneficiary under the Mortgages that secure the Promissory Notes (collectively referred to as the "Loans"), and any of its successors and/or assigns, and Dale D. Goldschlag (the "Borrower" or "Debtor") as Borrower and/or Mortgagor of the real property located at 240 Riverside Blvd., Unit 17B and Unit 17C, New York, NY 10068 (the "Property"). Beneficiary and Borrower shall be collectively referenced as the Parties;

WHEREAS, Unit 17B is encumbered by a Mortgage executed by Borrower on or about February 20, 2015 and recorded in the Official Records of NYC Department of Finance, Office of the City Register as between Borrower, and Lender Gibraltar Private Bank & Trust Company and subsequently assigned to Beneficiary (the "Unit 17B Mortgage");

WHEREAS, the Unit 17B Mortgage secures a "Note" executed by Borrower on or about February 20, 2015, between Borrower and Lender Gibraltar Private Bank & Trust Company, in the principal amount of $1,500,000.00 (the "Unit 17B Note");

WHEREAS, Unit 17C is encumbered by a Mortgage executed by Borrower on or about October 19, 2016 and recorded in the Official Records of NYC Department of Finance, Office of

1

the City Register as between Borrower, and Lender Gibraltar Private Bank & Trust Company and subsequently assigned to Beneficiary (the "Unit 17C Mortgage");

WHEREAS, the Unit 17C Mortgage secures a "Note" executed by Borrower on or about October 19, 2016, between Borrower and Lender Gibraltar Private Bank & Trust Company, in the principal amount of $2,720,000.00 (the "Unit 17C Note");

WHEREAS, Unit 17C Note is also secured by a Second Mortgage on Unit 17B executed by Borrower on or about October 19, 2016 and recorded in the Official Records of NYC Department of Finance, Office of the City Register as between Borrower, and Lender Gibraltar Private Bank & Trust Company and subsequently assigned to Beneficiary (the "Unit 17B Second Mortgage");

WHEREAS, subsequent to origination of the Unit 17C Note, Borrower obtained building permits and condo association approval to combine Unit 17B with Unit 17C;

WHEREAS, Borrower filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York on February 23, 2024 as Case No. 24-10297-PB (the "Bankruptcy");

WHEREAS, Borrower is selling Unit 26C in the building and will use the net sale proceeds to pay in full outstanding real estate taxes and prepetition and postpetition condo association dues and charges related to Unit 17B and Unit 17C;

WHEREAS, the Court ordered Borrower to make monthly adequate protection payments commencing October 2024;

WHEREAS, Parties have reconciled the proper amount of monthly adequate protection payments for both loans (Unit 17B - $13,628.56 per month, and Unit 17C - $19,522.63 per month), and agree that Borrower made *partial* adequate protection payments to Beneficiary;

WHEREAS, on or before April 22, 2025, Borrower will make the following "catch-up" adequate protection payment to Beneficiary in the aggregate amount of **$164,676.86** comprised of the following accrued obligations:

Unit 17B loan ending "3494" - $29,469.13 (Nov. 2024 – Mar. 2025);
Unit 17B City Tax – December 2024 - $22,605.03;
Unit 17B City Tax – March 2025 - $31.65;
Unit 17C loan ending "5036" - $97,613.15 (Nov. 2024 – Mar. 2025);
Unit 17C City Tax – December 2024 - $7,478.95; and
Unit 17C City Tax – March 2025 - $7,478.95

Beneficiary will provide to Borrower a breakdown of how the payments were applied once they have been posted on the servicing system. Borrower is not being charged default interest.

2

WHEREAS, in addition to the "catch-up" adequate protection payment noted above, Borrower shall make monthly adequate protection payments to Beneficiary beginning in April 2025 and each month thereafter until plan confirmation, as follows:

Unit 17B loan ending "3494" - $13,628.56 (April 2025);
Unit 17C loan ending "5036" - $19,522.63 (April 2025);
Unit 17B loan ending "3494" - $13,253.29 (May 2025);
Unit 17C loan ending "5036" - $19,540.31 (May 2025);
Unit 17B loan ending "3494" - $13,253.29 (June 2025); and
Unit 17C loan ending "5036" - $19,540.31 (June 2025);[1]

WHEREAS, Borrower shall remain current with all condo association fees for Unit 17B and Unit 17C, as well as payments to the building's Condo Association Board for the hallway between Unit 17B and Unit 17C under the License Agreement, and provide Beneficiary with an estoppel from the Board confirming that no delinquencies exist;[2]

WHEREAS, after the foregoing payments have been made timely by Borrower, Beneficiary shall review Borrower's monthly operating reports for March 2025, April 2025, and May 2025, and if Debtor establishes (i) monthly gross personal income of at least $100,000.00 for three consecutive months, (ii) Borrower's family contribution of $8,000.00 per month to Beneficiary for payment of Borrower's mortgage loans, and (iii) no material adverse change to Debtor's current financial position, Beneficiary will approve Borrower's request for loss mitigation for loans ending "3494" and "5036".

WHEREAS, Beneficiary agrees to modify each loan as follows: The new principal balance shall consist of the then outstanding principal balance of the loan plus the 2nd mortgage piggyback loan plus the negative escrow plus recoverable expenses plus the amount needed to fund a new escrow account. The new principal and interest payment for each loan shall be determined by amortizing the new principal balance over 30 years at an interest rate of 3%. An escrow payment as determined by the servicer will be added to the new principal and interest payment. Beneficiary will share all the details that go into determining the new principal balance and payment for each loan.

**WHEREFORE**, upon the record and proceedings in the Bankruptcy case, the Parties respectfully request that the Court approve this Stipulation and grant the following Order:

---

[1] To the extent Debtor has not confirmed a Plan by July 1, 2025, monthly adequate protection payments in the same amount as June 2025 shall continue to be made by Borrower to Beneficiary until a Plan is confirmed or the Bankruptcy case is dismissed or converted.

[2] As of February 23, 2024 (the "Petition Date"), Borrower was in arrears in paying his common charges to the Board of Managers of The Heritage Condominium (the "Board") in the amount of $9,702.07 for Unit 17B, and in the amount of $40,230.04 for Unit 17C, for a total claim of $49,932.11, plus interest, late fees and attorneys' fees. Also, Borrower owes the Board monthly common charges for storage units and license fees pursuant to a License Agreement for a portion of the seventeenth floor corridor adjacent to the Units.

3

**ORDERED**, that pursuant to 11 U.S.C. § 362(d), if the Debtor fails to perform any of the foregoing payment obligations timely, Beneficiary may serve a Notice of Default via email to Debtor's counsel that identifies the obligations in default. The notice shall advise if all defaults are not cured within **ten (10) business days** after service of the Notice of Default (the "Cure Period"), Beneficiary shall be entitled to relief from the automatic stay; and it is further

**ORDERED**, if the default is not cured within the Cure Period, Beneficiary may file and serve an Affidavit of Non-Compliance on the docket of this case identifying the obligations in default and attesting to the Debtor's failure to cure the defaults within the Cure Period. The Notice of Default and proof of service of the Notice of Default shall be attached to the Affidavit of Non-Compliance. Upon filing the Affidavit of Non-Compliance, the automatic stay will be terminated by an Order entered without a hearing, **five business (5) days** after the Affidavit of Non-Compliance is filed with the Court and served upon the Debtor and Debtor's counsel, provided that no challenge to Beneficiary's affirmation of non-compliance is timely made and filed in accordance with this Order, whereupon Beneficiary may exercise its rights and remedies available under applicable law as to the Property; and it is further

**ORDERED**, that if Debtor has received two notices of default, then, in the event of a third default, the stay will be terminated by an Order entered five (5) business days after an Affidavit of Non-Compliance is filed with the Court and served upon the Debtor and Debtor's counsel, provided that no challenge to Beneficiary's Affidavit of Non-Compliance is timely filed in accordance with this Order; and it is further

**ORDERED**, that a proposed Order lifting the automatic stay shall be submitted to the Court via electronic upload at the time an Affidavit of Non-Compliance is filed; and it is further

4

**ORDERED**, that any challenge to an Affidavit of Non-Compliance shall be brought by counter-affidavit, must be filed with the Court, and served on Beneficiary's counsel within **five (5) days** after the date of service of the Affidavit of Non-Compliance. Any such challenge shall be limited to the defense that the payment(s) have, in fact, been timely paid and have not been properly credited. The counter-affidavit shall be accompanied by evidence of such payment(s). If a counter-affidavit is timely served and filed, the stay shall remain in effect pending a hearing which the Court may schedule on an expedited basis or further order of the Court.

**IN WITNESS WHEREOF**, each of the Parties hereto has executed this Agreement on the date set forth opposite his, her, or its name below. **The undersigned hereby certify that they have read and fully understand all of the terms, provisions, and conditions of this Agreement, have executed this Agreement voluntarily, and have sought or could have sought legal advice from an attorney prior to executing this Agreement.**

Dated: April 21, 2025                         */s/ Dale D. Goldschlag*
                                              **DALE D. GOLDSCHLAG**
                                              Borrower and Mortgagor


Dated: April 22, 2025                         **FIRST HORIZON BANK**

                                    BY:   */s/ Matthew Morgan*

                                          Matthew Morgan, Officer
                                          (Printed Name), Authorized Signatory

5

**APPROVED AS TO FORM AND CONTENT:**

Dated:  April 22, 2025  　　　　　　　　　Jonathan S. Pasternak, Attorney at Law

　　　　　　　　　　　　　　　　　　　　*/s/  Jonathan S. Pasternak*
　　　　　　　　　　　　　　　　　　　　　Davidoff Hutcher & Citron LLP
　　　　　　　　　　　　　　　　　　　　　Attorneys for Dale D. Goldschlag


Dated:  April 22, 2025  　　　　　　　　　Gregory Sanda, Attorney at Law

　　　　　　　　　　　　　　　　　　　　*/s/ Gregory Sanda*
　　　　　　　　　　　　　　　　　　　　　McMichael Taylor Gray, LLC
　　　　　　　　　　　　　　　　　　　　　Attorneys for First Horizon Bank


**SO ORDERED THIS 25th DAY OF APRIL, 2025**

　　　　　　　　　　　　　　　　　　　　/s/ Philip Bentley
　　　　　　　　　　　　　　　　　　　　HON. PHILIP BENTLEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE